SACK, MARTIN, Associate Judge.
Appellants, plaintiffs in the court below, appeal from an adverse final summary judgment.
The basic facts underlying the litigation are that prior to May 5, 1966, appellants held three notes aggregating the sum of $80,544.87, secured by mortgages on properties located in Highlands County, Florida. The title was held by one Frank W. Souder, Jr., who had a commitment for a construction loan of $1,100,000.00 from an institutional lender, but a prerequisite was the satisfaction of the Moore mortgages. Souder consulted one Kroetz, president of the appellee company for a possible solution to the problem, and Kroetz suggested an arrangement which, with the approval of Souder’s attorney, one Duffy, was ultimately executed by the Moores and which we set out in extenso in Footnote (1) to this opinion.[1]
“THIS AGREEMENT, Made and entered in to this 5th day of May, 1966, by and between JAMES E. MOORE, JR. and SALLY H. MOORE, his wife (hereinafter called “Obligee”), and FRANK SOUDE'R ENTERPRISES, INC. (hereinafter called “Owner”), and TOWN HOUSE CONSTRUCTION CO.,
INO. (hereinafter called “Contractor”), and FRANK W. SOUDER, JR. (hereinafter called “Guarantor”), and CONTROL ESCROW PAYMENT COMPANY (hereinafter called “CEPCO”). “WITNESSETH: “WHEREAS, the Owner (formerly Lo-bo Enterprises, Inc.) has given the Ob- *492 ligee certain mortgages incumbering the following described property:
In reliance upon the terms of this agreement of May 5, 1966, the Moores satisfied their mortgages.
Unfortunately, the construction project failed to work out as contemplated, and the construction lender foreclosed its mort-
gage. Thereupon the Moores sued Control Escrow Payment Company, the amended complaint predicating liability, in Counts I and III upon the appellants’ construction of the agreement of May 5, 1966, and in Count II upon an alleged diversion of funds by the appellee.
“The Southerly one-half (%) of Lot 2 in Block 94 of original Town of Sebring, Highlands County, Florida; The Northerly one-half (%) of Lot 2 in Block 94 of original Town of Se-bring, Highlands County, Florida; and That certain improvement and structure described as Model Apartment and appurtenances thereto and located on a portion of Lot 2, Block 94 of the Town of Sebring, Highlands County, Florida.
Said mortgages are more particularly described as follows: Mortgage dated May 1, 1965, in the original principal amount of $32,900.00, recorded in O.R. Book 231, Page 179, Highlands County, Florida ; Mortgage dated August 3, 1965, in the original principal amount of $30,-000.00, recorded in O.R. Book 239, Page 212, Highlands County, Florida; and Mortgage dated September 2, 1965, in the original principal amount of $17,644.87, record in O.R. Book 241, Page 12, Highlands County, Florida.
“NOW, THEREFORE, it is mutually covenanted and agreed that:
“1. The Owner is developing a 71-unit condominium apartment building, and has entered in a Building Construction Contract with the Contractor (a copy of which is attached hereto) for the construction of the 71-unit apartment building for the lump sum price of $1,100,-000.00; further, that that the Owner has obtained a construction loan in the amount of $1,100,000.00.
“2. The Owner and Contractor have entered into agreement with CEPCO (a copy of which is attached hereto) wherein all proceeds from the construction loan have been assigned to CEPCO for disbursement in payment of all costs incurred under the aforementioned building construction contract.
“3. The Owner has made certain sales in the aforementioned apartment building and has escrowed some of the deposits in Tropical State Bank in Sebring, Florida, and contemplates all future deposits on sales as well as final payments for apartments sold will also be es-crowed in Tropical State Bank. As a consideration for the giving of the construction loan, the Owner will assign all funds so escrowed to the first mortgagee until the loan of $1,100,000.00 has been fully paid and satisfied; further assigns any remaining funds escrowed or to be es-crowed to CEPCO for payment of the note as described in this agreement.
“4. The Owner, Contractor and Guarantor, in consideration of the Obligee satisfying the aforementioned mortgages, agree and covenant as follows :
“(a) The Owner will give the Obligee and the Guarantor will co-sign a collateral note in the amount of $80,544.87, with interest, payable on or before one year from date of note (May 5, 1966).
“(b) The Guarantor as sole stockholder of the Owner, will escrow with Harry B. Duffy, Esquire, and pledge as collateral on the note until fully paid, all of the stock in that corporation.
“(c) That all funds remaining in the construction fund after all costs have been paid as referred to in Paragraph 2 be used to satisfy the note to the Obligee.
“(d) If such funds as referred to in the above-numbered Paragraph 4(c) are insufficient, then such deficit shall be paid from funds as referred to in Paragraph 3.
“5. CEPCO will act as agent and will comply with all of the terms of this agreement and make such disbursements so long as no conflict arises in its obligations under the disbursing agreement referred to in Paragraph 2.
“6. The sole purpose and intent of the parties to this agreement is to insure the Obligee of payment of the Owner’s obligation and give maximum security until such obligation is discharged and still remain responsible under its other agreements.
“THIS AGREEMENT shall inure to and be binding upon the heirs, devisees, successors and assigns of the parties hereto.
“IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written. tl * * * ”
*493 Upon considering the respective parties’ motion for summary judgment, all pleadings, despositions and affidavits at a pretrial conference, the court found there was no material genuine issue of fact and entered the summary judgment in favor of the appellee, from which appellants appealed.
As to Counts I and III, principal reliance is placed by appellants on Paragraph 6 of the agreement of May 5, 1966, reading:
“6. The sole purpose and intent of the parties to this agreement is to insure the Obligee of payment of the Owner’s obligation and give maximum security until such obligation is discharged and still remain responsible under its other agreements.”
as well as the verbal assurances of Messrs. Kroetz and Duffy that the agreement of May 5 was the best solution to the problem.
The word “insure” in Paragraph 6 cannot be taken out of the context of the remainder of the agreement, to convert the instrument into one of guaranty or surety-ship or insurance. It is elementary that the legal effect of a contract must be determined from the wording of the entire contract. A reading of the whole instrument makes it apparent that all that is intended by Paragraph 6 is to formulate a plan, which, if all went well, would presumably provide maximum security for the Moores. It is clear that appellee was acting solely as an escrow agent, and its sole obligation was to perform its duties in accordance with the escrow agreement.
As to Count II there was no issue of fact whatsoever presented to the trial judge at the pre-trial conference on the question of diversion of funds, or breach of its duties as escrow agent, and appellants’ briefs fail to indicate any evidence at all in the record on this point.
While we may feel sorry for the plight of the Moores, yet they are in no different position than many others in this state, and elsewhere, who have subordinated their senior positions under similar circumstances.
Accordingly, the judgment appealed from is affirmed.
CROSS, C. J., and McCAIN, DAVID L., Associate Judge, concur.

. “AGREEMENT